No. 28,982.

In the Matter of Probating the Will of Thomas H. Shoup, Deceased; LILLIAN ROSS VARNAU et al., *Appellants*, v. W. O. BOLER, Executor of the Will of Mary Ann Shoup, Deceased, *Appellee*.

(285 Pac. 554.)

Opinion filed March 8, 1930.

*John W. Brown, Kenneth H. Foust* and *S. A. Gard*, all of Iola, for the appellants.

*C. S. Ritter*, of Iola, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case originated in a proceeding before the probate court of Allen county for the purpose of making a record of the contents of the will of the late Thomas H. Shoup, which had been mislaid or lost from the files of the court, pertaining to the probate of the will and the administration of his estate.

Shoup died testate on October 10, 1920. His will was duly probated; his widow functioned as executrix under the supervision of the probate court, and filed her final statement of account on Octo-

ber 1, 1922; notice of her application for the approval of her final settlement and discharge was not published until November 25, 1926, and she was discharged on December 28, 1926.

Some time in 1926 it was discovered by interested parties that the will of Shoup was absent from the files of the probate court, and on November 2, 1926, Mary Ann Shoup, widow and executrix of Shoup, filed in that court an affidavit setting up the pertinent facts, the death of Shoup in 1920, his testacy, her appointment and qualification as executrix, the probate of the will, its contents, which in substance were a devise of forty acres of mortgaged land to herself, and legacies of one dollar each to his two daughters and a granddaughter, the payment of these legacies, and the settlement of the estate according to the terms of the will, and alleging that the will itself had been lost or misplaced from the files of the court.

On an *ex parte* hearing the probate court found all the facts as alleged in the widow's affidavit, made a record of the contents of the lost will, and ordered that she be discharged as executrix and the surety on her bond released.

Some time in 1927 Mary Ann Shoup died testate, and the appellee, W. O. Boler, was named and qualified as her executor. On August 17, 1927, apparently on the possibility that the proceedings in 1926 to restore the record of the lost will of Thomas H. Shoup might be defective, Boler, executor, published a notice that on September 17, 1927, he would offer additional corroborating proof of the contents of the lost will of Shoup—

"Which will was offered, proved and admitted to probate in the probate court of Allen county, Kansas, November 3, 1920; and additional proof of the execution of said will and of its contents, and of its presentation to the probate court of Allen county, Kansas; and of its being then proved and admitted to probate, and Mary Ann Shoup, his wife, being duly appointed executrix thereof; and proof that since that time the said will has been lost and cannot now be found; and ask for orders of the probate court completing and correcting the records of said court concerning and relating to the said will and proceedings thereunder."

The appellant, Lillian Ross Varnau, granddaughter and legatee of Shoup, and others appeared specially for the purpose of submitting to the court their objections to a hearing on any question set forth in the notice on the ground that Boler, executor of Mary Ann Shoup, had no legal capacity to invoke the court's jurisdiction, and that the estate of Thomas H. Shoup had been fully settled and his executrix discharged, and that the statute of limitations and laches barred the relief sought by Boler, executor, and that the publication

notice was without validity, and the court had no jurisdiction of the subject matter.

These objections to the jurisdiction were overruled and the probate court heard the evidence touching the will and its contents, its probate and the authentication by the witnesses thereto, the facts of the administration of the estate according to the will, the payment of the legacies to Shoup's two daughters and to this appellant, his granddaughter, and the depositing of their receipts for the payment of their legacies with the probate court. Attached to the final account of Mary Ann Shoup, executrix, filed October 11, 1922, were these receipts:

"I the undersigned have received one dollar as my part of T. H. Shoup estate.                                                                                       ANNIE BEAMAN."

"I received $1, my share of my father, T. H. Shoup estate.
                                                                                                            GERTIE BOLER."

"Received of Mrs. Anna Shoup the sum of $1 in regard to the terms of the will of T. H. Shoup.                                                             LILLIAN ROSS VARNAU."

The existing files of the probate court were ample to prove that there had been a will and that it had been duly probated. Indeed no material document pertaining to the administration of the estate of Thomas H. Shoup was missing from the files except the will itself, and its contents were abundantly established.

The probate court made the following order:

"And now [September 17, 1927], after hearing all the evidence offered, and after considering the same and considering the facts already known to the court, and the facts shown by the record, and considering the purpose of the hearing, the probate court finds, orders and adjudges that the evidence offered be filed in the estate of Thos. H. Shoup and made a part of the record thereof; and that the findings here made by the court from the oral evidence offered are and become a part of the record of the said estate in this court, all for the purpose of more fully showing that the will of Thos. H. Shoup was fully admitted to probate in this court and that the real estate belonging to him when he died was by him devised to Mary Ann Shoup, his wife, by his said will, to wit: The northwest quarter of the southwest quarter of section 9, township 26, range 21, less two acres in the southwest corner, Allen county, Kansas; and that as executor of the said will of Thos. H. Shoup, she paid all the other bequests therein made to the persons entitled thereto, and that said persons, to wit, Annie Beaman, Gertie Boler and Lillian Ross Varnau receipted her for same and she filed the said receipts in her report in this court, where they now are on file."

Lillian Ross Varnau for herself and the other heirs of Thomas H. Shoup appealed to the district court. Boler, executor of the will of Mary Ann Shoup, filed a motion to dismiss the appeal on various

grounds—insufficiency of transcript, no appeal nor appeal bond filed within the statutory time, and—

"4th. The affidavit of appeal transcribed in the transcript does not show facts sufficient to sustain an appeal. . . .

"5th. The transcript shows that the persons seeking an appeal have accepted and receipted for the full share of the estate of Thos. H. Shoup belonging to them, prior to October 11, 1922, and are estopped from denying their said acts."

The fourth ground of the motion was obviously good. There being no tangible basis for a dispute of fact touching the matters necessary to be established to justify the order of restoration and substitution, the probate court had jurisdiction to make the order complained of. Upon sufficient showing, a probate court, like courts of record generally—and perhaps all others—has inherent power to restore or substitute papers, files and records of the court which have been lost or destroyed. (34 Cyc. 606 *et seq.*) While the exercise of this power may be governed by statute, as in part it is in this jurisdiction (R. S. 60-3901 *et seq.*), yet our code expressly provides:

"Nothing in this act shall be so construed as to deprive any person of the right to proceed under the code of civil procedure, or by any other mode known to or recognized by existing laws for the substitution or restoration of any pleading or other paper which is or has been lost, destroyed, or withheld, and the remedy herein prescribed shall be deemed to be cumulative." (R. S. 60-3908.)

In 17 R. C. L. 1173 *et seq.* it is said:

"Independent of statutory authorization, every court of record has a supervisory and protecting charge over its records and the papers belonging to its files, and may at any time direct the correction of clerical errors, or the substitution of papers in case the originals are purloined or lost. This power is a matter of necessity, whether the loss occurs while the cause is in *fieri*, before it has progressed to final judgment or after such judgment has been rendered, and whether the loss is of the whole record or of papers which when it is finally made up will constitute a part of it. In making such corrections or substitutions, the clerk is under the control and authority of the court; and the matters thus substituted, by order of the proper court, become records of equal validity to those which are destroyed.

". . . Lost papers which constituted a part of the judicial record may be supplied by the court at any time, as well after as during the term. An application to supply a lost writ, declaration, or other part of the record, if accompanied by proof of loss, is, in general, addressed to the discretion of the court, and as such, the decision of a court of original jurisdiction cannot be reexamined in an appellate court on a writ of error."

Passing this phase of the appeal to note the argument of counsel

for appellants, it is emphasized that in the proceedings before the probate court no will or copy of the will of Thomas H. Shoup, deceased, was exemplified. Of course not. This was not an action to probate a lost will, but to restore a lost document belonging to the files of the probate court. That it happened to be the will of Shoup did not create a different situation than the loss or destruction of any other paper or record would have done. The nature of the proceeding being what it was, the appellants' argument and citations touching the consequences of willfully or negligently withholding a will from probate for more than three years are altogether beside the point.

The fifth ground of the motion was also meritorious. Notwithstanding the disappearance of the will from the files of the probate court, the related papers remaining in the files showed beyond cavil that the appellants had accepted the legacies bestowed on them by their ancestor's will. They were therefore in no position to question the factual existence of the will, nor its probate, nor the propriety of the proceedings instituted to restore it to the files by an order of substitution, restoration, or other proper chronicle of its contents. (*Medill v. Snyder*, 61 Kan. 15, 58 Pac. 962; 40 Cyc. 1893 *et seq.*; 28 R. C. L. 329, 331.)

The trial court dismissed the appeal. Perhaps a more precisely correct disposition of it would have been to affirm the judgment on the record submitted by the appellants. However, it is not suggested that if instead of dismissing the appeal the trial court had considered anew the evidence adduced in the probate court, including the evidence which inhered in the probate court's files concerning the will, its probate, the executor's final account, the appellants' acknowledgments of receipt of their respective legacies, and the other probative data of convincing character, it might have come to a different conclusion from that reached by the probate court. Consequently it would serve no purpose to remand this cause with instructions to the district court to set aside its judgment of dismissal and to enter judgment in favor of the appellee and against the appellant.

The judgment is affirmed.